IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FRONTIER DEVELOPMENT LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>CRAIG TEST BORING CO., INC.<br>AND CRAIG TESTING<br>LABORATORIES, INC.,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action No.<br>16-778 (JBS/KMW)<br><br><br>**OPINION** |

APPEARANCES:

Alan R. Ackerman, Esq.
Law Offices of Alan R. Ackerman
1719 Route 10 East
Suite 106
Parsippany, NJ 07054
    Attorney for Plaintiff

Michael J. DeRita, Esq.
Chiumento McNally, LLC
One Echelon Plaza
227 Laurel Road
Suite 100
Vorhees, NJ 08043
    Attorney for Defendant

**SIMANDLE, District Judge:**

## I.  INTRODUCTION

This matter comes before the Court by way of the motion of Defendants Craig Test Boring Co., Inc. and Craig Testing Laboratories, Inc. (collectively, "the Defendants") to dismiss Plaintiff Frontier Development LLC's ("Plaintiff") Amended

Complaint. [Docket Item 32.][1] On February 11, 2016, Plaintiff

filed a Complaint in this Court alleging breach of contract

against both Defendants. [Docket Item 1.] On August 3, 2016,

this Court allowed Plaintiff to amend the Complaint as a matter

of right under Federal Rule of Civil Procedure 15(a). [Docket

Item 16.] Shortly thereafter, Plaintiff filed the Amended

Complaint. [Docket Item 17.] Defendant filed their Answer to the

Amended Complaint on August 23, 2016. [Docket Item 20.] On

January 26, 2017, Defendants filed a motion to dismiss the

Amended Complaint, now pending before the Court. [Docket Item

32.] On February 24, 2017, Plaintiff filed an affidavit of merit

("AOM"). [Docket Item 35.]

The first issue to be determined by the Court is whether

Plaintiff's claim sounds in breach of contract or professional

malpractice. If the claim is for professional malpractice, as

Defendants argue, then N.J.S.A. 2A:53A-26 through -29 ("the AOM

Statute" or "the Statute") applies to Plaintiff's Amended

Complaint. On the other hand, if the claim is rooted in breach

---

[1] As the Court explains, _infra_, Defendants styled the instant
motion as a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6). Plaintiff, however, treated the motion as
one for summary judgment, submitting exhibits in support of its
opposition brief, and Defendants did the same in their reply
brief. Accordingly, the Court, like the parties, treats this
motion as one seeking summary judgment and will consider the
exhibits the parties submitted in support of, and in opposition
to, the Defendants' motion.

of contract, the AOM Statute does not apply and no AOM was necessary.

If the AOM Statute applies, Plaintiff was required to file an AOM within 60 (or 120) days of the Defendants' Answer to the Amended Complaint, see N.J.S.A. 2A:53A-27, "unless some exception applies," Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 312 (3d Cir. 2012) (quoting Couri v. Gardner, 801 A.2d 1134, 1141 (N.J. 2002)). Under this scenario, if Plaintiff failed to furnish an AOM within 60 (or 120) days, the Court would consider the applicability of any potentially-relevant exceptions to the AOM Statute. If none of the exceptions apply, however, the Court must dismiss Plaintiff's Amended Complaint with prejudice. Id. at 305; see also N.J.S.A. 2A:53A-29 (setting forth the consequence for a plaintiff's failure to provide an affidavit of merit).

For the reasons discussed below, the Court finds that the AOM Statute applies to Plaintiff's claim. Plaintiff failed to furnish an AOM within the statutorily-required timeframe and none of the exceptions to the AOM Statute apply. Accordingly, the Court will, as it must, dismiss Plaintiff's Amended Complaint with prejudice.

## II.  BACKGROUND

### A.  **Factual Background**

Plaintiff was the developer of a commercial building located in Egg Harbor Twp., New Jersey. (Amend. Compl. at ¶ 7.) During the early stages of the construction project, Plaintiff concluded it was necessary "to determine the depth of the topsoil to be removed to prepare the site for construction, and whether the soil beneath the topsoil was stable to support the proof-rolling of a foundation for the structure." (Id. at ¶ 8.)

To that end, Plaintiff entered into an agreement with Craig Test Boring Co., Inc. ("Defendant Boring"), whereby Defendant Boring was to perform geotechnical boring testing and prepare a soil boring report ("the Report"). (Id. at ¶ 11.) Defendant Boring then subcontracted with Craig Testing Laboratories, Inc. ("Defendant Testing") to perform the actual testing and prepare the Report. (Id. at ¶ 12.) On October 14, 2015, Plaintiff received a copy of the Report from Defendant Boring. (Id. at ¶ 20.) The Report was authored by Eduardo Freire, P.E., an employee of Defendant Testing. (Id. at ¶ 20.)

According to Plaintiff, "[a]s a result of the faulty findings in the [Report]. . . Plaintiff was required to remove an excessive amount of topsoil, and loose ground underneath the topsoil in contradiction to the original Geotechnical Engineering Report." (Id. at ¶ 25.) According to Plaintiff,

"[t]he faulty [Report]. . . resulted in delay in Plaintiff's construction schedule, the incursion of excessive costs to remove in excess of 3,000 additional yards of topsoil and loose granular soil beneath the topsoil, and Plaintiff's purchase of suitable fill to stabilize the ground." (Id.) As compensation for the damages Plaintiff allegedly incurred, Plaintiff requests $174,078.74 from the Defendants. (Id. at ¶ 26.)

### B. **Procedural Background**

On February 11, 2016, Plaintiff filed a Complaint before this Court, alleging breach of contract. [Docket Item 1.] Specifically, Plaintiff claimed that: (1) Defendant Boring breached the services contract with Plaintiff by impermissibly assigning the testing work and preparation of the Report to Defendant Testing; and (2) both Defendants breached the services contract by "misstat[ing] the depth of the topsoil and amount of excavation that would be required on the property to prepare the site for construction." [Id. at ¶¶ 13, 16.]

On March 11, 2016, Defendants filed their first Answer and asserted, among other affirmative defenses, that the Complaint was barred by Plaintiff's failure to comply with the AOM Statute. [Docket Item 5 at 6, ¶ 26.] On July 12, 2016, Defendants filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the basis that

Plaintiff had not filed an AOM within 120 days of Defendant's March 11, 2016 Answer. [Docket Item 14.]

On August 1, 2016, Plaintiff filed a cross-motion to amend the Complaint. [Docket Item 15.] In this cross-motion, Plaintiff argued that: (1) the Court should grant the Plaintiff leave to amend the Complaint under Federal Rule of Civil Procedure 15(a); (2) if the Court does not grant Plaintiff leave to amend, an AOM should not be required because Plaintiff's cause of action against Defendants is for breach of contract, not professional malpractice; (3) even if the AOM Statute does apply to Plaintiff's claim, the "common knowledge" exception removes Plaintiff's obligation to file an AOM; and (4) if the Court grants the Plaintiff's motion, Plaintiff should have 60 days from when Defendants file their Amended Answer to file the AOM. [Docket Item 15.] On August 3, 2016, the Court granted Plaintiff's request for leave to amend as a matter of right under Federal Rule of Civil Procedure 15(a)(1)(B), and dismissed Defendants' first motion to dismiss as moot. [Docket Item 16.]

On August 9, 2016, Plaintiff filed an Amended Complaint. [Docket Item 17.] In the Amended Complaint, Plaintiff re-alleged that: (1) Defendant Boring breached the services contract with Plaintiff by impermissibly assigning the testing work and preparation of the Report to Defendant Testing; and (2) both Defendants breached the services contract by providing Plaintiff

with a "faulty report," containing "faulty findings" and "faulty conclusions." [Id. at ¶¶ 12, 24-25.] On August 23, 2016, Defendants filed an Answer to the Amended Complaint, again raising the affirmative defense that the Amended Complaint is barred by Plaintiff's failure to comply with the AOM Statute. [Docket Item 20 at 7, ¶ 26.]

On August 17, 2016, Defendants filed a motion for reconsideration of the Court's Order dismissing the original dismissal motion as moot. [Docket Item 18.] Defendants argued that, by granting Plaintiff leave amend, the Court had improperly permitted Plaintiff to circumvent the AOM Statute's 120-day filing requirement. [Id.] On September 6, 2016, Plaintiff filed an Opposition to Defendant's motion for reconsideration [Docket Item 21], and on September 19, 2016, Defendant filed a Reply to Plaintiff's Opposition. [Docket Item 24.][2] On September 21, 2016, Judge Williams ordered that "discovery shall be STAYED pending the outcome of the pending Motion for Reconsideration." [Docket Item 26.]

On January 26, 2017, the Court denied the Defendants' Motion for Reconsideration. [Docket Item 31.] As the Court noted in its Order, Plaintiff had been granted leave to amend the Complaint as a matter of right under Federal Rule of Civil

---

[2] Plaintiff filed an unauthorized sur-reply brief on September 20, 2016 [Docket Item 25] that was not considered.

Procedure 15(a)(1)(B), thereby rendering any issues regarding the 120-day period to file an AOM moot. [Id.] Since the Court had not decided whether the Plaintiff's claims required an AOM, the Court explained, "Defendants are free to file additional motions in response to Plaintiff's Amended Complaint contesting whether or not an Affidavit of Merit needs to be filed in this case. . . ." [Id.]

The following day, Defendants filed a motion to dismiss Plaintiff's Amended Complaint. [Docket Item 32.] On February 8, 2017, Plaintiff filed its Opposition to Defendants' motion to dismiss. [Docket Item 33.] On February 14, 2017, Defendants filed their Reply to Plaintiff's Opposition. [Docket 34.]

Finally, on February 24, 2017, Plaintiff filed an AOM prepared by Sean DiBartolo, P.E. [Docket 35.] Plaintiff provided no explanation for its filing of the AOM, nor has it sought to do so.

## III. STANDARD OF REVIEW

Defendants have styled the motion presently under consideration as a motion to dismiss for failure to state a cause pursuant to Federal Rule of Civil Procedure 12(b)(6). As the Court explained in Note 1, supra, both parties have treated the motion as one for summary judgment, submitting evidence outside the pleadings in support of their respective positions. As the parties themselves have treated Defendants' motion as a

summary judgment motion, the Court follows their lead and will review the motion as one seeking summary judgment.

This treatment of Defendants' motion is consistent with the Third Circuit's interpretation of the AOM Statute. As the Third Circuit recently explained, "[t]hat the [AOM] is not a pleading requirement counsels that a defendant seeking to 'dismiss' an action based on the plaintiff's failure to file a timely affidavit should file a motion for summary judgment under Rule 56, and not a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Nuveen, 692 F.3d at 303 n.13. To that end, the Third Circuit instructs trial courts "to consider a motion to dismiss for failure to state a claim as a motion for summary judgment, as provided by Rule 12(d)." Id. Thus, under Federal Rule of Civil Procedure 12(d), the Court will consider the Defendants' motion to dismiss the Amended Complaint as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether there

is a disputed issue of material fact, the Court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, (1986)).

## IV. DISCUSSION

### A. **The AOM Statute Applies**

Plaintiff avers that the AOM Statute does not apply to its claim against Defendants because "[n]o Court or attorney can find that Plaintiff's claim [for breach of contract] . . . requires a 'deviation from the professional standard of care.'" (Pl. Opp. Br. at 13.) Defendants, on the other hand, argue that, despite having "conveniently labeled this matter as a breach of contract claim," the AOM Statute applies here because Plaintiff's allegation that Defendants provided a "faulty" report is effectively the same as alleging that Defendants failed to comply with the professional standards of care for engineers. (Def. Br. at 8-9.) The Court finds that the AOM Statute applies for the following reasons.

The AOM Statute was intended "to weed out frivolous lawsuits early in litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in

court." <u>Hubbard ex rel. Hubbard v. Reed</u>, 774 A.2d 495, 500 (N.J.

2001); <u>see</u> <u>also</u> <u>Nuveen</u>, 692 F.3d at 308 ("[T]he purpose of the

[AOM] Statute is to identify frivolous malpractice actions by

requiring independent verification of the validity of claims.").

To that end, the Statute requires that:

> In any action for . . . property damage resulting from an
> alleged act of malpractice or negligence by a licensed
> person[3] in his profession or occupation, the plaintiff shall
> . . . provide each defendant with an affidavit of an
> appropriate licensed person that there exists a reasonable
> probability that the care, skill or knowledge exercised or
> exhibited in the treatment, practice or work that is the
> subject of the complaint, fell outside acceptable
> professional or occupational standards or treatment
> practices.

N.J.S.A. 2A:53A-27.[4]

When evaluating whether the AOM Statute applies to a

particular claim, "[i]t is not the label placed on the action

that is pivotal but the nature of the legal inquiry." <u>Couri</u>, 801

A.2d at 1141. Thus, the New Jersey Supreme Court instructs that,

"when presented with a tort or contract claim asserted against a

---

[3] The AOM Statute provides a list of sixteen professions and
occupations which qualify as "a licensed person." N.J.S.A.
2A:53A-26. As relevant to this case, the list includes
"engineers." N.J.S.A. 2A:53A-26(e). Business organizations of
"licensed professionals" are similarly covered by the AOM
Statute. <u>Endl v. New Jersey</u>, 2016 WL 1224133, at *4 (D.N.J. Mar.
29, 2016) (citing <u>Martin v. Perinni Corp.</u>, 37 F. Supp. 2d 362,
366 (D.N.J. 1999)).
[4] In diversity actions, as here, the Court must apply substantive
state law, including New Jersey's Affidavit of Merit statute.
<u>See</u> <u>Chamberlain v. Ciampapa</u>, 210 F.3d 154, 158 (3d Cir. 2000)
(explaining that the affidavit of merit statute must be applied
by federal courts sitting in diversity).

professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional care applicable to that specific profession." Id.; see also Levinson v. D'Alfonso & Stein, P.C., 727 A.2d 87, 89 (N.J. Super. Ct. App. Div. 1999)("Courts should not countenance an attempt to dilute the Affidavit of Merit statute by giving effect to a mere change in nomenclature.").

In Charles A. Manganaro Consulting Engineers, Inc. v. Carneys Point Twp. Sewerage Auth., the defendant counter-sued the plaintiff, alleging that "[p]laintiff breached its contract . . . by failing to properly design the project in question, by failing to properly prepare the plans and specifications, and the plaintiff failed to properly review shop drawings submitted by the general contractor." 781 A.2d 1116, 1117 (N.J. Super. Ct. App. Div. 2001). The plaintiff subsequently filed a motion for summary judgment seeking dismissal of the defendant's counterclaim on the ground that the defendant failed to provide an AOM within 120 days of the plaintiff's answer. Id. The defendant, like Plaintiff here, maintained it was not required to file an AOM because its counterclaim was for breach of contract, rather than professional malpractice. Id. at 349.

The Appellate Division found that "even though defendant labeled its counterclaim as a claim for breach of contract, it was required to provide plaintiff an affidavit of merit." Id. The Court first observed that "the essential factual allegations upon which defendant's counterclaim rests are that plaintiff failed to _properly_ prepare the plans and specifications and failed to _properly_ review shop drawings submitted by the general contractor." Id. (emphasis added) (internal quotation marks omitted). The Court then concluded that the defendant's allegation that the plaintiff failed to act "properly" required an expert to show that plaintiff had not acted "with that degree of care, knowledge, and skill ordinarily possessed and exercised in similar situations by the average member of the profession practicing in the field." Id. (quoting Aielo v. Muhlenberg Reg'l Med. Ctr., 733 A.2d 433, 437 (N.J. 1999)). Finding that the defendant's allegation was for professional malpractice and not breach of contract, the Court held that the AOM Statute applied.

Like the defendant in Manganaro, Plaintiff in this case makes much of fact that its claim against Defendants is labeled "breach of contract." While Plaintiff alleges that Defendant Boring breached its services contract with Plaintiff by subcontracting work to Defendant Testing (Amend. Compl. at ¶¶ 11-14), the gravamen of Plaintiff's complaint is that the "_faulty_ report" prepared by the Defendants contained "_faulty_

13

conclusions" and "<u>faulty</u> findings." (<u>Id.</u> at ¶¶ 24-25)(emphasis added). Thus, as in <u>Manganaro</u> where expert testimony was necessary to prove whether the plaintiff had acted "properly," expert testimony will similarly be necessary to determine if Defendants performed their duties in a "faulty" manner and whether Defendants' findings and conclusions were "faulty." Plaintiff's claim sounds in professional malpractice and the AOM Statute applies, as required by New Jersey law.

> B.  **The AOM was not Timely Filed**

Having found that the AOM Statute applies, the Court will now consider whether the AOM filed on February 24, 2017 was timely. For the following reasons, the Court finds it was not.

With respect to the timing for filing an AOM, the Statute provides: "the plaintiff <u>shall</u>, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an [AOM]." N.J.S.A. 2A:53A-27 (emphasis added). The AOM Statute further permits the court, "upon a finding of good cause," to grant "no more than one additional period, not to exceed 60 days, to file the [AOM]." <u>Id.</u> In other words, the AOM Statute requires the plaintiff to furnish an AOM within no more than 120 days of the defendant's answer (assuming one extension for good cause).

According to the Third Circuit, "the beginning point of the 120-day limitations period [is] the date on which a defendant

files his answer to the final amended complaint." Snyder v. Pascack Valley Hosp., 303 F.3d 271 (3d Cir. 2002). Defendants filed their Answer to the Amended Complaint on August 23, 2016. [Docket Item 20.] Thus, Plaintiff's AOM was due on October 22, 2016, or at the latest on December 21, 2016, assuming Plaintiff would have received a 60-day extension for good cause. Plaintiff did not file its AOM until February 24, 2017. [Docket Item 35.] Even if Plaintiff requested a 60-day extension, which it did not, the filing would still fall outside the required period by more than two months.[5]

Under New Jersey law, the late-filed AOM, which was neither created nor served within the 120-day statutory period, cannot be submitted now in fulfillment of the statutory requirements. See McBride v. Cty. of Atlantic, 2011 WL 3236212 (D.N.J. July 28, 2011) (citing Kritzberg v. Tarsny, 768 A.2d 810, 813 (N.J. Super. Ct. App. Div. 2011)); see also Douglass v. Obade, 819 A.2d 445, 446 (N.J. Super. Ct. App. Div. 2003) ("[T]he end of the line . . . the drop-dead date [for filing an AOM], is 120 days."). Accordingly, the only way Plaintiff's professional malpractice claim can proceed is if it falls within one of the exceptions to the AOM Statute, addressed below.

---

[5] Notably, the AOM was also filed ten days after Defendants' Motion to Dismiss the Amended Complaint was fully briefed. Plaintiff provided no explanation for filing the AOM after briefing for Defendants' motion had concluded.

C.    **Exceptions to the AOM Statute**

Since Plaintiff failed to timely file an AOM, the Court must consider whether one of the four "limited exceptions" to the Statute applies. Nuveen, 692 F.3d at 305. These exceptions include: (1) a statutory exemption regarding lack of information; (2) a "common knowledge" exception; (3) an exception predicated on "substantial compliance" with the AOM requirement; and (4) the presence of "extraordinary circumstances" that, for equitable reasons, may warrant relief." Id. (citations omitted); see also Fontanez v. United States, 24 F. Supp. 3d 408, 413-15 (D.N.J. 2014) (detailing the relevant exceptions). The Court will now consider each relevant exception in turn.[6]

1.    Common Knowledge Exception

Plaintiff first argues that, if the AOM Statute applies, the common knowledge exception removes Plaintiff's obligation to furnish an AOM. (Pl. Opp. Br. at 17.) Specifically, Plaintiff contends that, in order to determine whether Defendants' findings and conclusions were "faulty," the "average juror can use common knowledge to understand that Freire's original Geotechnical Engineering Report said remove between two (2") and

---

[6] Plaintiff does not raise the first exception (regarding lack of information) in any of its briefs. Accordingly, the Court will only consider the second, third, and fourth exceptions to the AOM Statute referenced above.

three (3") inches of topsoil . . . and [the Report] concluded that Plaintiff remove six (6) inches of top soil." (Id. at 21.) According to Plaintiff, "It is within common knowledge of the jury that six (6) inches of topsoil is greater than three (3) inches of top soil." (Id.) Defendants, in turn, contend that the common knowledge exception does not apply to "this highly technical Professional Engineering Malpractice [case]." (Def. Br. at 6.) To that end, Defendants argue that "the issue [here] involves intricate engineering calculations and knowledge of subsurface geotechnical engineering analyses to determine the depth of suitable soils to build upon in a structurally sufficient manner," which will resolve expert witness testimony to resolve. (Id. at 8.) The Court finds that the common knowledge exception does not apply for the following reasons.

The New Jersey Supreme Court first articulated a common knowledge exception to the AOM Statute in Hubbard. There, the Court explained that "[t]he doctrine applies where 'jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of specialized knowledge of experts." Hubbard, 774 A.2d at 499 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 734 A.2d 778, 785 (N.J. 1999)). Thus, in common knowledge malpractice cases a plaintiff "will not need expert testimony at trial to establish the

standard of care or a deviation therefrom." Hubbard, 774 A.2d at 499.

In keeping with the New Jersey Supreme Court's guidance to construe this exception narrowly,[7] the case history shows that the exception has only been applied in "exceptionally obvious" cases. McBride, 2011 WL 3236212, at *4. In Hubbard, for example, a dentist removed the wrong tooth. 774 A.2d at 498. In Palanque v. Lambert-Woolley, decided the same day as Hubbard, a physician twice misread test results, which led to a misdiagnosed ectopic pregnancy and ultimately unnecessary surgery. 774 A.2d 501, 503 (N.J. 2001). In Estate of Chin, a physician and several nurses had misconnected tubes to a hysteroscope. 734 A.2d at 781. As a result, gas flowed into the decedent's uterus instead of fluid, causing an embolism. Id. In Bender v. Walgreen Eastern Co., Inc., a pharmacist filled a prescription with the incorrect drug. 945 A.3d 120, 122 (N.J. Super. Ct. App. Div. 2008). In each of these "exceptionally obvious" cases, the New Jersey courts held that a jury was entitled to rely on its common

---

[7] The Hubbard Court cautioned against parties overly relying on the common knowledge exception in professional malpractice cases: "[W]e construe that exception narrowly in order to avoid non-compliance with the statute. Indeed, the wise course of action in all malpractice cases would be for the plaintiffs to provide affidavits even when they do not intend to rely on expert testimony at trial." Id. at 501.

knowledge to determine whether the defendant breached a duty of care.

A few examples of cases which did not warrant a common knowledge exception make the "exceptionally obvious" quality of the above cases even more apparent. In Isshak v. Eichler, the plaintiff underwent emergency eye surgery to reattach a detached retina in his right eye, at defendant's urging, which resulted in double vision and an eye infection in plaintiff's right eye. 2010 WL 1030058, at *1 (N.J. Super. Ct. App. Div. Mar. 22, 2010). The Court ruled that expert testimony would be necessary because "[i]t is only through expert testimony that a jury may be apprised of any risks inherent in retinal surgery." Id. at *2. In D'Amico v. Jersey Shore Univ. Med. Ctr., meanwhile, a physician left a pebble inside plaintiff's knee during surgery. 2009 WL 2426339, at *1 (N.J. Super. Ct. App. Div. Aug. 10, 2009). This too did not fall under the common knowledge exception because "some objects may safely be left in tissue, and it may be more harmful to remove an object than to leave it in." Id. at *2. Again, expert testimony was necessary to determine liability. Id.

In this case, the primary basis for Plaintiff's claim of professional negligence against Defendants arises from alleged "faulty findings" and "faulty conclusions," which Defendants included in an allegedly "faulty report." (Amend. Compl. at ¶¶

24-25.) This is not a case where Defendants provided <u>no</u> report to Plaintiff, nor is this case one in which the Defendants' alleged conduct was so egregious as to permit the jury to use its common sense to determine whether the Defendants clearly breached the duty of engineering care owed to Plaintiff. Such a claim could, perhaps, fall under the common knowledge exception. But without further explanation of what a "not faulty" report should have looked like, and without clarity as to how Defendants' alleged breach of their duty led to the harm complained of, a jury of laypersons would not be able, "using ordinary understanding and experience, to determine [Defendants'] negligence without the benefit of specialized knowledge or experts." <u>Estate of Chin</u>, 734 A.2d at 785. An expert of the type specified by the AOM Statute is precisely what lay finders would need to understand the standard of engineering applicable to the preparation of a soil boring report and to determine whether Defendants breached this standard. For these reasons, the Court does not find that this case rises to the "exceptionally obvious" level necessary to permit application of the common knowledge exception.

### 2. Substantial Compliance Exception

Plaintiff next argues, "[i]f the Court holds that Plaintiff needs to comply with the Affidavit of Merit [Statute], it should find that Plaintiff has substantially complied. . . ." (Pl. Opp.

Br. at 25.) In response, Defendants contend that "Plaintiff here has fallen short of its burden to demonstrate any of the five factors" required to show "substantial compliance." (Def. Rep. Br. at 12.) The Court finds that Plaintiff has not substantially complied with the AOM Statute for the following reasons.

In Cornblatt v. Barow, the New Jersey Supreme Court first recognized a substantial compliance exception to the AOM Statute. 708 A.2d 401, 411 (N.J. 1998). The purpose behind the substantial compliance doctrine, the Court explained, "is to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose. It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims." Galik v. Clara Maass Med. Ctr., 771 A.2d 1141, 1148 (N.J. 2001) (internal citation omitted). To that end, the substantial compliance exception requires the plaintiff to show:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute."

Id.

Here, the Court finds that Plaintiff failed to satisfy the second requirement, as it has not demonstrated any steps were taken to comply with the AOM Statute before the 60 (or 120) day

period expired. Nor has Plaintiff satisfied the fifth requirement, as Plaintiff has provided <u>no</u> explanation for its non-compliance with the AOM Statute. Accordingly, the Court finds that the substantial compliance exception does not apply.

### 3. <u>Extraordinary Circumstances Exception</u>

Finally, Plaintiff argues that Judge Williams' Scheduling Order, which stayed discovery "pending the outcome of the pending Motion for Reconsideration," should excuse their failure to timely file the AOM. Specifically, Plaintiff avers that Judge Williams' Scheduling Order is "good cause to toll, and extend, the time Plaintiff has to file an [AOM] should the Court find one is required" (Pl. Opp. Br. at 25). Despite Plaintiff's reference to "tolling," the Court considers this argument as one made under the exceptional circumstances exception to the AOM Statute.[8] For the reasons explained below, the Court finds that the exceptional circumstances exception does not apply here.

---

[8] The Court's determination is supported by the headings in Plaintiff's own brief, (<u>see</u> Pl. Opp. at 24 ("[The AOM Statute] Provides for an Exception of Time Under Exceptional Circumstances")), as well as this Court's past treatment of such arguments, <u>see</u> <u>McMullin v. Harleysville Ins. Co., Inc.</u>, 200 F. Supp. 3d 460, 467–68 (D.N.J. 2016)(addressing a request for tolling under the exceptional circumstances exception to the AOM Statute); <u>see</u> <u>also</u> <u>Richards v. Wong</u>, 2015 WL 1931486, at *4 (D.N.J. 2015)("The Affidavit of Merit is not a discovery mechanism controlled by court rules, but rather is a [substantive] statutory requirement pursuant to <u>N.J.S.A.</u> 2A:53A–26. Thus, when the Court issued a stay on discovery, it did not toll the time for the filing of the Affidavit of Merit.").

Shortly after the AOM Statute was enacted into law, the New Jersey Supreme Court explained that "a dismissal for failure to comply with the [AOM] statute should be with prejudice in all but extraordinary circumstances." Cornblatt, 708 A.2d at 413. The Third Circuit has since recognized that the determination of "extraordinary circumstances" is, necessarily, a fact-sensitive inquiry. Chamberlain, 210 F.3d at 162 (citing Hartsfield v. Fantini, 695 A.2d 259, 263 (N.J. 1997)).

Judge Williams' Scheduling Order was issued 29 days after Defendants filed their Amended Reply. [Docket Item 26.] The AOM was filed on February 24, 2017 [Docket Item 35], which was 29 days after this Court's Order denying Defendants' Motion for Reconsideration on January 26, 2017. [Docket Item 31.] Thus, if one were to disregard the period of time between Judge William's Scheduling Order and this Court's Order denying reconsideration, as Plaintiff requests, the AOM would have been filed 58 days after Defendants' Amended Answer. The issue is presented whether the temporary stay of discovery presents an "extraordinary circumstance" under which the tardy filing of the AOM should be excused.

In Chamberlain, the plaintiff argued that, since the defendant had not explicitly requested an AOM in his answer and the District Court had not ordered an AOM to be furnished in its pre-trial scheduling order, the plaintiff was "lulled" into

believing an AOM was unnecessary. 210 F.3d at 162. But, as the Third Circuit explained, the AOM Statute clearly outlines the filing requirements for a professional malpractice case. Id. at 162-63. Moreover, the plaintiff did not file any motions requesting clarification as to whether an AOM was necessary, nor did the plaintiff ask for an extension of time to file the AOM. Id. at 163. Indeed, the Court observed, "nothing occurred during this case that would lead the parties to believe a 'time-out' from filing deadlines existed." Id. Accordingly, the Third Circuit affirmed the District Court's decision to dismiss the plaintiff's complaint with prejudice. Id.

On the other hand, New Jersey courts have exercised discretion, when appropriate, to excuse the untimely filing of an AOM. In Hyman Zamft and Manard, L.L.C. v. Cornell, for example, the New Jersey Appellate Division found that a mediation order imposing a stay on "further proceedings" imposed a "time-out" on all litigation and, therefore, excused the untimely filing of an AOM. 707 A.2d 1068, 1072 (N.J. Super. Ct. App. Div. 1998). Similarly, in McMullin this Court excused the plaintiffs' untimely filing of an AOM after finding that a District-wide order issuing a temporary stay of "further litigation" in all Hurricane Sandy flood cases, "froze-in-time this action, and all Hurricane Sandy actions, to allow the parties to engage in settlement efforts, and no party ever

sought relief from the stay." 200 F. Supp. 3d at 468 (emphasis in original).

On the surface, the circumstances in Hyman and McMullin might appear similar to those present in the immediate case. But there are a number of notable differences.

First, Judge Williams' Scheduling Order only stayed "discovery," rather than "further litigation" or "further proceedings." There was, therefore, no indication that litigation had been frozen in time, just the parties' discovery obligations. Indeed, litigation of the pending dispositive motion continued.

Second, unlike in Hyman and McMullin, Plaintiff here does not actually claim that Judge Williams' Scheduling Order staying discovery created any "confusion" about Plaintiff's obligation to timely file an AOM. Indeed, Plaintiff has given no explanation for its late-filed AOM. Rather, Plaintiff simply argues that Judge Williams' Scheduling Order "is good cause to toll, and extend, the time the Plaintiff has to file an AOM should the Court find one is required." (Pl. Opp. Br. at 25.) The Court disagrees.

Third, in a brief filed on August 1, 2016, Plaintiff conceded, "If the Court Grants Plaintiff's Cross-Motion to Amend the Complaint, Plaintiff Has sixty (60) Days to Comply with the Requirements of [the AOM Statute]." [Docket Item 15 at 31.]

Thus, Plaintiff gave clear acknowledgment of its AOM obligation well before Judge Williams' Scheduling Order took effect. And there is no evidence on this record that Plaintiff sought any clarification as to the effect of the Judge Williams' Scheduling Order, which was issued 52 days after the Court granted Plaintiff's cross-motion to amend the Complaint.

Finally, and most importantly, Defendants first asserted the affirmative defense that an AOM was required in their Answer to the original Complaint filed on March 11, 2016. [Docket Item 5 at 6, ¶ 26.] Thus, Plaintiff was placed on notice of its AOM requirement almost a year before it filed the AOM, and had more than six months before Judge Williams' Scheduling Order to file an AOM. Instead, Plaintiff decided to wait until February 24, 2017 to furnish an AOM to Defendants. And, again, Plaintiffs provided no explanation for doing so.

Time and again, the New Jersey courts have made plain that "an attorney's inadvertence in failing to timely file an affidavit will generally result in dismissal with prejudice." Paragon Constr., Inc. v. Peachtree Condo. Ass'n, 997 A.2d 982, 986 (N.J. 2010); see also Hyman, 707 A.2d at 1071 ("Carelessness, lack of circumspection, or lack of diligence on the part of counsel are not extraordinary circumstances which will excuse missing a filing deadline."); Ferreira, 836 A.2d at 784 ("[A]ttorney inadvertence is not a circumstance entitling

plaintiff to a remedy of dismissal of a complaint without prejudice.").

Despite Defendants' repeated requests for an AOM, Plaintiff decided not to file one until after briefing had concluded on Defendants' <u>second</u> motion to dismiss. Plaintiff was afforded ample notice and opportunity to file an AOM before the 60 (or 120) day deadline passed, and Plaintiff was clearly capable of actually producing one. [<u>See</u> Docket Item 35.] The circumstances here are far from "exceptional" and do not warrant dismissal without prejudice.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint will be regarded as a motion for summary judgment, which will be granted for failure to timely file an AOM pertaining to Defendants' alleged professional engineering malpractice as required by N.J.S.A. 2A:53A-26 through -29. An accompanying Order will be entered.


**September 15, 2017**                          **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                U.S. District Judge